Walker G. Harman, Jr. [WH-8044]
THE HARMAN FIRM, P.C.
*Attorneys for Plaintiff*
200 West 57th Street, Suite 900
New York, New York 10019
(212) 425-2600
wharman@theharmanfirm.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JAMIE ARDIGO,                                   Index No. 1:12-cv-03627-JMF

          *Plaintiff*,                        **AMENDED COMPLAINT**

-against-

                                                    **PLAINTIFF**
                                                  **HEREBY**
J. CHRISTOPHER CAPITAL, LLC,                    **DEMANDS A**
CHRISTOPHER BURCH,                              **TRIAL BY JURY**
*and* EDWARD WELSH, *individually*,

          *Defendants*.
------------------------------------------------------------------X

Plaintiff, JAMIE ARDIGO, by his attorneys, THE HARMAN FIRM, P.C., as and for his Amended Complaint against Defendants alleges as follows:

### PARTIES AND NATURE OF ACTION

1. This action seeks damages for discrimination based on sexual orientation, hostile work environment, and retaliation, under the New York City Human Rights Law ("NYCHRL"). This action also seeks damages for aiding and abetting illegal discrimination under the NYCHRL.

2. At all times relevant hereto, Plaintiff JAMIE ARDIGO ("ARDIGO"), has been a citizen of the State of New Jersey residing in Hoboken, who was subjected to discrimination based on sexual orientation, and unlawfully terminated from his job in direct retaliation for his

complaints about discrimination and a hostile work environment.

3. At all times relevant hereto, Plaintiff ARDIGO is a gay man. As such, Plaintiff ARDIGO is a member of a protected class, pursuant to the New York City Human Rights Law (*N.Y.C. Admin. Code §§ 8-107*).

4. At all times relevant hereto, Defendant J. CHRISTOPHER CAPITAL, LLC. ("J. CHRISTOPHER CAPITAL"), a Defendant herein, is a Delaware corporation doing business within the State of New York, with offices located at 1115 Broadway, New York, NY 10010.

5. At all times relevant hereto, CHRISTOPHER BURCH ("BURCH"), a Defendant herein, was and is the only owner of Defendant J. CHRISTOPHER CAPITAL, and is a citizen of the State of Florida.

6. At all times relevant hereto, Defendant EDWARD WELSH ("WELSH"), a Defendant herein, was and is employed by Defendant J. CHRISTOPHER CAPITAL as Vice President of Human Resources, and was Plaintiff ARDIGO's direct supervisor, who participated in the decision to illegally terminate Plaintiff ARDIGO.

7. Defendants subjected Plaintiff ARDIGO to discrimination based on sexual orientation and a hostile work environment, and unlawfully terminated him in direct retaliation for his complaints about discrimination and a hostile work environment.

8. Plaintiff ARDIGO was subsequently caused to feel severe emotional and financial distress resulting from Defendants' outrageous discriminatory and retaliatory conduct.

**VENUE AND JURISDICTION**

9. Jurisdiction is proper pursuant to 28 USC § 1332, in that Plaintiff ARDIGO is a citizen of the State of New Jersey, Defendant J. CHRISTOPHER CAPITAL is a citizen of the State of Delaware, Defendant BURCH is a citizen of the State of Florida, Defendant WELSH is

a citizen of the State of Connecticut, and the amount in controversy exceeds the requisite amount of $75,000.

10. Venue is properly laid in this Court in that the unlawful conduct giving rise to this Complaint occurred within the Southern District of New York, at Defendant J. CHRISTOPHER CAPITAL's premises, located at 1115 Broadway, New York, NY 10010.

## DEMAND FOR A JURY TRIAL

11. Plaintiff hereby demands a jury trial.

## STATEMENT OF FACTS

12. On or about November 9, 2011, Defendant WELSH offered Plaintiff ARDIGO a position as Director of Field Human Resources at Defendant J. CHRISTOPHER CAPITAL. Plaintiff ARDIGO was told that he would be running the Human Resources function with Defendant WELSH. Plaintiff ARDIGO accepted the position and began working there.

## SEXUAL ORIENTATION DISCRIMINATION AND HOSTILE WORK ENVIRONMENT

13. From the beginning of his employment, Plaintiff ARDIGO overheard senior level executives make offensive and inappropriate comments regarding gender and sexual orientation. These offensive comments made the work environment increasingly uncomfortable and hostile.

14. For instance, on or about November 28, 2011 and December 5, 2011, during meetings with the C Wonder team, Plaintiff ARDIGO heard Defendant BURCH, the Company owner, state that he "only hire[d] gay men because they [we]re productive and [he] trust[ed] them". Plaintiff ARDIGO found this statement that stereotyped gay men to be extremely offensive.

15. On another day, Plaintiff ARDIGO heard Monika Chiang, Creative Director and Defendant BURCH's girlfriend, tell Nick Steel, MC Director of Public Relations: "Oh, are you going to introduce me to another gay guy?!". Mr. Steel was embarrassed by the comment, and Ms. Chiang stated, "Oh, I didn't realize you were in HR". These comments made Plaintiff ARDIGO extremely uncomfortable.

16. Thereafter, Plaintiff ARDIGO talked to Defendant WELSH about Defendant BURCH's and Ms. Chiang's comments, explaining that they were repeated, offensive, inappropriate and unprofessional, and that he was concerned for the Company. Defendant WELSH replied that "Well, he is the owner of the Company."

17. Nothing was done to correct the situation, as these repeated, offensive, harassing comments and the hostile work environment they created continued.

18. On or about December 9, 2011, Defendant WELSH informed Plaintiff ARDIGO that Lauren Lucas, the General Manager of MC in Los Angeles, was raising claims of harassment against Mr. Steel, and instructed Plaintiff ARDIGO to conduct a thorough investigation. Plaintiff ARDIGO's investigations revealed that Mr. Steel had made statements about "dildos in purses", adding that it was "obvious that one of the employees did not play with Barbie dolls growing up".

19. On December 13, 2011, Plaintiff ARDIGO provided Defendant WELSH with a detailed overview of his investigations, expressing his concerns about such offensive harassing comments being made in the Company. Defendant WELSH was not surprised by Mr. Steel's comments and said that Mr. Steel probably did not mean anything bad by them. Plaintiff ARDIGO then reminded Defendant WELSH that the investigated person's intention was irrelevant in harassment claims.

4

20.     Shortly after this first investigation, on or about December 15, 2011, Defendant WELSH and Plaintiff ARDIGO met with Mr. Steel and informed him that a complaint had been made. Mr. Steel admitted making the inappropriate comments in question. Plaintiff ARDIGO informed Mr. Steel that such behavior was unacceptable and not conducive to a supportive, positive work environment. Mr. Steel replied that he understood, but mentioned Defendant BURCH's inappropriate and offensive comments about gay men and women, and the language he had used.

21.     Immediately after the meeting, Plaintiff ARDIGO suggested to Defendant WELSH that, given the situation, some form of documentation or warning should be issued. Defendant WELSH refused to write Mr. Steel up, and only asked Plaintiff ARDIGO to send Defendant WELSH a recapitulatory email. Plaintiff ARDIGO told Defendant WELSH that he disagreed, given the seriousness of the comments made.

22.     It was clear then that Defendant WELSH was not interested in addressing inappropriate and offensive comments in the workplace and that Plaintiff ARDIGO's attempts to do so would be frowned upon.

## RETALIATION

23.     Defendant WELSH then began a retaliatory campaign against Plaintiff ARDIGO by making false claims regarding his work performance, solely in retaliation for Plaintiff ARDIGO raising his and others' rights under anti-discrimination laws.

24.     On or about January 5, 2012, during a conversation, Defendant WELSH reproached Plaintiff ARDIGO with a "wall" he had put between them, adding that this purported "wall" could negatively impact Plaintiff ARDIGO's success at the Company.

25. Defendant WELSH then asserted that he needed to "know" his Director in order to trust him, stating that Plaintiff ARDIGO should reveal to him personal information. Plaintiff ARDIGO felt pressured to reveal information such as his sexual orientation. This was an inappropriate requirement, and Plaintiff ARDIGO told Defendant WELSH he felt uncomfortable being pressured into revealing such personal and irrelevant information.

26. Defendant WELSH's offensive and harassing conduct intensified the hostile work environment. In particular, on January 23, 2012, Defendant WELSH told Plaintiff ARDIGO that he wanted to follow up on their January 5 conversation. He said that he did not know Plaintiff ARDIGO and that their relationship felt forced.

27. This inappropriate feedback then turned into a retaliatory campaign consisting of inaccurate criticism on Plaintiff ARDIGO's work performance. For instance, Defendant WELSH stated that, although Plaintiff ARDIGO was technically an expert, he had not developed his relationships with the field. Such feedback was new to Plaintiff ARDIGO, as neither Defendant WELSH nor any of Plaintiff ARDIGO's senior management or colleagues had ever expressed the same concerns.

28. Furthermore, Defendant WELSH began criticizing Plaintiff ARDIGO's last feedback from the General Manager's meeting (which feedback was generally very positive). He added that it was "all about [Plaintiff ARDIGO]" and what he needed. Plaintiff ARDIGO stated that it concerned him that this criticism happened right after Plaintiff ARDIGO had put Defendant WELSH on notice of the comments made by Defendant BURCH and Ms. Chiang.

29. It was clear then that Defendant WELSH's false claims regarding Plaintiff ARDIGO's work performance and feedback were in direct retaliation for Plaintiff ARDIGO raising his and others' rights under anti-discrimination laws. Indeed, Defendant WELSH said

that at this point he was not sure as to Plaintiff ARDIGO's future within the Company.

30. On or about January 25, 2012, during a conversation, Plaintiff ARDIGO told Defendant WELSH that he felt particularly concerned by the proximity in time between his claims of discrimination and a hostile work environment, and Defendant WELSH's criticism. Plaintiff ARDIGO added that he disagreed with the feedback that Defendant WELSH provided regarding his performance, as Plaintiff ARDIGO's work was highly appreciated within the company, as Jennifer Grillo, a General Manager, had publicly acknowledged.

31. On or about February 7, Defendant WELSH abruptly terminated Plaintiff ARDIGO, saying Plaintiff ARDIGO was "not a right fit" and that "this [was] not the right company for [Plaintiff ARDIGO]." Defendant WELSH further stated that he had been told that Plaintiff ARDIGO was a "disruption" to the business, without providing any substantial examples in support of this rather unclear and bizarre allegation. Plaintiff ARDIGO was surprised by Defendant WELSH's statement, as, rather than being reported as "disruptive", he had been thanked several times for his productive support.

32. It is very clear that Plaintiff ARDIGO was subjected to discrimination based on sexual orientation and a hostile work environment, in violation of New York City Laws. Moreover, Plaintiff ARDIGO was terminated in direct retaliation for expressing his concerns about discrimination based on sexual orientation, and a hostile work environment in violation of New York City Laws.

33. Additionally, considering Plaintiff ARDIGO's substantial accomplishments during his tenure at J. Christopher Capital and the gratitude he was awarded for such accomplishments, discrimination on the basis of sexual orientation and retaliation for Plaintiff ARDIGO's expressed concerns are the only viable basis for Plaintiff ARDIGO's termination.

Therefore, J. Christopher Capital unlawfully terminated Plaintiff ARDIGO on February 7, 2012, in violation of the NYCHRL.

## FIRST CAUSE OF ACTION
### New York City Human Administrative Code – Sexual Orientation Discrimination, Hostile Work Environment, and Retaliation

33. Plaintiff ARDIGO repeats and realleges each and every allegation contained in paragraphs "1" though "32" with the same force and effect as if separately alleged and reiterated herein.

34. Defendant J. CHRISTOPHER CAPITAL subjected Plaintiff ARDIGO to discrimination based on sexual orientation, a hostile work environment, and retaliation, in violation of the New York City Human Administrative Code § 8-101, *et seq*.

35. As a result, Plaintiff ARDIGO suffered damages for past and future earnings, other employment benefits, and emotional injuries in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### New York City Human Administrative Code – Aiding and Abetting

36. Plaintiff ARDIGO repeats and realleges each and every allegation contained in paragraphs "1" through "32" with the same force and effect as if separately alleged and reiterated herein.

37. Defendants BURCH and WELSH willfully and consciously aided and abetted the discrimination based on sexual orientation, the hostile work environment, and the retaliation in violation of the New York City Human Administrative Code § 8-107, *et seq*.

Case 1:12-cv-03627-KPF   Document 11   Filed 06/05/12   Page 9 of 9

38. As a result, Plaintiff ARDIGO suffered damages for past and future earnings, other employment benefits, and emotional injuries in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

(i) On the First Cause of Action, actual damages to be determined at trial, but in no event less than $500,000;

(ii) On the Second Cause of Action, actual damages to be determined at trial, but in no event less than $500,000;

(iii) Disbursements and other costs;

(iv) Attorneys' fees; and,

(v) For such other and further relief which the Court deems just and proper.

Dated: New York, New York
June 4, 2012

By: /s/ Walker G. Harman, Jr.
Walker G. Harman, Jr. [WH-8044]
THE HARMAN FIRM, P.C.
*Attorneys for Plaintiff*
200 West 57th Street, Suite 900
New York, NY 10019
(212) 425-2600
wharman@theharmanfirm.com

9