UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JAMIE ARDIGO,                                              :
                                                           :
                         Plaintiff,              :
               -v-                                  :         12 Civ. 3627 (JMF)
                                                           :
J. CHRISTOPHER CAPITAL, LLC,                               :         OPINION AND ORDER
CHRISTOPHER BURCH,                                         :
*and* EDWARD WELSH, *individually*,                        :
                                                           :
                         Defendants.             :
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: Mar 25, 2013

JESSE M. FURMAN, United States District Judge:

       This employment discrimination case, premised on diversity jurisdiction, stems from plaintiff Jamie Ardigo's employment as Director of Field Human Resources at J. Christopher Capital, LLC ("Christopher Capital") from November 9, 2011, to February 7, 2012. Ardigo sues his former employer under the New York City Human Rights Law ("NYCHRL"), N.Y.C. Administrative Code, § 8-101, *et. seq.*, alleging (1) discrimination on the basis of sexual orientation; (2) a hostile work environment; and (3) retaliation. Ardigo also brings aiding-and-abetting claims under the NYCHRL against Christopher Burch, the owner of Christopher Capital, and Edward Welsh, Ardigo's direct supervisor at the firm.

       Defendants have moved to dismiss Ardigo's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. After Defendants filed their motion to dismiss, Plaintiff moved for sanctions on the ground that Defendants' motion was "entirely frivolous" and designed only to "intimidate, harass and delay." Briefing on the latter motion, however, has been stayed pending the Court's decision on Defendant's motion to dismiss. For the reasons

discussed below, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Additionally, notwithstanding the stay on briefing, Plaintiff's motion for sanctions is DENIED.

## BACKGROUND

The following facts are taken from the Amended Complaint and are assumed to be true for purposes of this motion. *See, e.g.*, *Lafaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

On November 9, 2011, Ardigo, a gay man, was offered the position of Director of Field Human Resources at Christopher Capital, running the Human Resources function with Defendant Welsh, the Vice President of Human Resources. (Am. Compl. ¶ 12). From the beginning of his employment at Christopher Capital, Ardigo alleges, he "overheard" senior level executives make "offensive and inappropriate comments regarding gender and sexual orientation." (*Id.* ¶ 13). The Amended Complaint cites three examples. First, on or about November 28, 2011, and December 5, 2011, Ardigo overheard Defendant Burch, the firm's owner, state that he "only hire[d] gay men because they [we]re productive and [he] trust[ed] them." (*Id.* ¶ 14). On a third occasion (the date of which is not specified), Ardigo overheard Monika Chiang, the company's Creative Director and Burch's girlfriend, say to Nick Steel, Director of Public Relations for MC, a brand of the company: "Oh, are you going to introduce me to another gay guy?!" (*Id.* ¶ 15). Steel was embarrassed by the comment, and Chiang then stated (presumably in reference to Ardigo): "Oh, I didn't realize you were in HR." (*Id.*).

Ardigo complained to Welsh about Burch's and Chiang's comments, describing them as "repeated, offensive, inappropriate and unprofessional." (*Id.* ¶ 16). He also stated he was "concerned for the company." (*Id.*). Welsh replied only that Burch was "the owner of the Company." (*Id.*). Ardigo alleges that "[n]othing was done to correct the situation" and that the

2

"repeated, offensive, harassing comments and the hostile work environment they created continued." (*Id.* ¶ 17).

On December 9, 2011, Welsh tasked Ardigo with investigating a claim of harassment against Steel, then the General Manager of MC in Los Angeles. (*Id.* ¶ 18). Ardigo conducted a short investigation and informed Welsh that Steel had made statements about "dildos in purses" and had said that it was "obvious that one of the employees did not play with Barbie dolls growing up." (*Id.*). Although Ardigo expressed concerns about Steel's behavior, Welsh appeared to downplay it. (*Id.* ¶ 19). Shortly thereafter, Welsh and Ardigo met with Steel about the complaint. Steel admitted that he had made the comments and acknowledged that they were neither acceptable nor conducive to a positive work environment. (*Id.* ¶ 20). In doing so, however, he also mentioned Burch's offensive comments about gay men and women. (*Id.*). Against Ardigo's recommendation, Welsh declined to issue a formal warning to Steel. Instead, Welsh asked Ardigo to send him a "recapitulatory email." (*Id.* ¶ 21).

The Amended Complaint alleges that, after this incident, Welsh started "a retaliatory campaign" against Ardigo. (*Id.* ¶ 23). On or about January 5, 2012, for instance, Welsh accused Ardigo of putting up a "wall" between them and put pressure on Ardigo to reveal personal information about himself such as his sexual orientation. (*Id.* ¶¶ 24-25). Toward the end of January, Welsh told Ardigo that "he did not know [him] and that their relationship felt forced." (*Id.* ¶ 26). According to the Amended Complaint, these comments were followed by a "retaliatory campaign consisting of inaccurate criticism [of Ardigo's] work performance." (*Id.* ¶¶ 27-28).

On two occasions in late January 2012, Ardigo expressed concern to Welsh about the "proximity in time between his claims of discrimination and a hostile work environment" and

Welsh's criticisms. (*Id.* ¶¶ 28, 30). Ardigo added that he disagreed with Welsh's assessments of his performance, insisting that his work was "highly appreciated within the company," as a general manager had publicly acknowledged. (*Id.* ¶ 30).

Approximately two weeks later, on February 7, 2012, Welsh "abruptly" fired Ardigo. (*Id.* ¶ 31). Welsh told Ardigo that he was "not a right fit" and that Christopher Capital was "not the right company" for him. (*Id.*). Welsh further stated that he had been told that Ardigo was a "disruption" to the business, although he did not provide any "substantial examples" in support of this allegation. (*Id.*). Ardigo was surprised by the statement, as he "had been thanked several times for his productive support." (*Id.*).

## LEGAL STANDARDS

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). To survive a Rule 12(b)(6) motion, however, the plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Further, if the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

4

In the present case, Plaintiff's claims are all brought under the NYCHRL. In relevant part, the NYCHRL makes it unlawful for any employer "because of the actual or perceived . . . sexual orientation . . . of any person, . . . to discriminate against such person in compensation or in terms, conditions, or privileges of employment." NYCHRL § 8-107(1)(a). The law has a "uniquely broad and remedial" purpose. Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), N.Y.C. Local Law No. 85 (2005). As such, it "must be reviewed independently from and more liberally than [its] federal and state counterparts." *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (internal quotation marks omitted). Federal cases — such as cases involving similar claims under Title VII of the Civil Rights Act of 1964 ("Title VII") — "may be used as aids in interpretation only to the extent that the counterpart provisions are viewed 'as a floor below which the [NYCHRL] cannot fall, rather than a ceiling above which the local law cannot rise.'" *Williams v. City of New York Hous. Auth.*, 872 N.Y.S. 2d 27, 29, 31 (1st Dep't 2009) (quoting The Restoration Act § 1).

A court "considering a claim under the NYCHRL must first identify the provision of the City HRL [it is] interpreting and then ask, as required by the City Council: What interpretation would fulfill the broad and remedial purposes of the City's Human Rights Law?" *Fattoruso v. Hilton Grand Vacations Co., LLC,* 12 Civ. 911 (KBF), 2012 WL 2102394, at *4 (S.D.N.Y. June 11, 2012) (internal quotation marks omitted). At the same time, federal courts must be mindful that "the NYCHRL does not operate as a general civility code," *id.* (internal quotation marks and emphasis omitted), and that, "at a minimum, employment discrimination claims [under the NYCHRL] must meet the standard of pleading set forth in *Twombly* and *Iqbal*," *Goodman v. Port Auth.*, 850 F. Supp. 2d 363, 386 (S.D.N.Y. 2012) (internal quotation marks omitted).

5

**DISCUSSION**

The Amended Complaint includes two causes of action, but Plaintiff really alleges three discrete claims under the NYCHRL: (1) discrimination on the basis of sexual orientation; (2) a hostile work environment; and (3) retaliation. The Court will address each in turn.[1]

**A. Discrimination on the Basis of Sexual Orientation**

Ardigo's first claim is for discrimination on the basis of his sexual orientation. To prevail on that claim, a plaintiff must "ultimately prove that (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class." *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005) (internal quotation marks omitted). An adverse employment decision or action is "generally characterized as a materially adverse change in the terms and conditions of employment," and "may include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006) (internal quotation marks omitted).

Ardigo has failed to state a discrimination claim. Although a section of the Amended Complaint is titled "Sexual Orientation Discrimination and Hostile Work Environment," the

---

[1] In their motion to dismiss, Defendants contend that this case should be dismissed because Plaintiff failed to comply with the Court's Electronic Case Filing Rules and Instructions — by failing to e-mail a copy of the Amended Complaint to caseopenings@nysd.uscourts.gov. (Defs.' Mem. of Law 19-21). Although Plaintiff's failure to do so despite repeated deficiency notices on the docket is inexplicable, the Court declines to dismiss the Amended Complaint on the basis of this technical error. Instead, Plaintiff is given until April 15, 2013, to properly file the Amended Complaint. Failure to do so will result in an appropriate sanction.

facts pleaded in that section relate only to the allegedly offensive comments made by his superiors and co-workers. And while he does bring a claim for unlawful termination, he alleges that his termination was "in direct retaliation for expressing his concerns about discrimination based on sexual orientation, and a hostile work environment," (Am. Compl. ¶ 32), not because of his actual or perceived sexual orientation. Put simply, the Amended Complaint does not allege that Ardigo suffered any materially adverse change in the terms and conditions of his employment based on his membership in a protected class. Accordingly, his discrimination claim cannot survive Defendants' motion to dismiss. *Cf. Bermudez v. City of New York*, 783 F. Supp. 2d 560, 590 (S.D.N.Y. 2011) (dismissing a discrimination claim where it was duplicative of a hostile work environment claim).

## B. Hostile Work Environment

Next, Plaintiff alleges that he was subjected to repeated comments that made his "work environment increasingly uncomfortable and hostile." (Am. Compl. ¶¶ 13, 17). To prevail on a hostile work environment claim under the NYCHRL, a plaintiff must show that he was "treated less well than other employees because of" his membership in a protected class. *Williams*, 872 N.Y.S. 2d at 39. Although this test is easier to meet than the tests for hostile work environment claims under the NYCHRL's state and federal analogues, behavior that "could only be reasonably interpreted by a trier of fact as representing no more than petty slights and trivial inconveniences" still does not suffice. *Id.* at 41. In particular, the incidents alleged must amount to more than "sporadic insensitive comments" to state a plausible claim. *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 593 (S.D.N.Y. 2011) (internal quotation marks omitted); *see also, e.g.*, *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, No. 09 Civ. 1251 (DAB), 2011 WL 3586060, at *9 (S.D.N.Y. July 29, 2011) (citing cases dismissing NYCHRL hostile work

7

environment claims on summary judgment when "the incidents alleged amount[ed] to only sporadic insensitive comments").

Applying these standards here, Ardigo fails to state a hostile work environment claim. Conclusory allegations of "repeated, offensive, harassing comments" aside (Am. Compl. ¶ 17), the Amended Complaint identifies only three occasions when allegedly offensive statements were made. Twice, Ardigo allegedly overheard Burch state that he "only hire[d] gay men because they [we]re productive and [he] trust[ed] them." (*Id.* ¶ 14). And on a third occasion, he overheard Chiang say to Steel: "Oh, are you going to introduce me to another gay guy?!" (*Id.* ¶ 15). The only other specific allegations made to support the hostile work environment claim are the events surrounding Ardigo's investigation of Steel's allegedly harassing conduct. Those events, however, undermine rather than support Ardigo's claim of hostile work environment. Far from ignoring potentially offensive and harassing behavior, Welsh asked Ardigo to look into the allegations against Steel. Within two days of Ardigo reporting his findings, Welsh and Ardigo met with Steel to inform him that his "behavior was unacceptable and not conducive to a supportive, positive work environment." (*Id.* ¶ 20). Although Ardigo thought that the consequences for Steel should have been harsher, his disagreement with Welsh on that score is not a reason to infer hostility in the workplace.

At most, therefore, the Amended Complaint alleges that, over a period of several months, Ardigo overheard three mildly offensive statements. Even considering these allegations cumulatively, as the Court must, *see, e.g.*, *Schwapp v. Town of Avon*, 118 F.3d 106, 110-11 (2d Cir.1997), this is not sufficient, under *Iqbal* and *Twombly*, to state a plausible hostile work environment claim under the NYCHRL. *Cf. Yee Sing Li v Educ. Broad. Corp.*, Index No. 115948/2010, 2011 N.Y. Misc. LEXIS 3522, at *14-15 (N.Y. Sup. Ct. June 30, 2011) (rejecting

8

a hostile work environment claim under the NYCHRL where the defendant had stroked plaintiff's arm and stated "[a]sian skin is so soft" and "you love it when a hot guy like me touches you," and, on a later occasion, grabbed his buttocks). Ardigo's conclusory assertions of hostility and offensive comments are not enough to salvage the claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to state a claim].").

**C. Retaliation**

Ardigo's final direct claim is for retaliation — specifically, that Welsh made "false claims regarding his work performance" and ultimately fired him, "solely in retaliation for . . . raising his and others' rights under anti-discrimination laws." (Am. Compl. ¶¶ 23-32). To prevail on a retaliation claim under the NYCHRL, "a plaintiff must show 1) he engaged in a protected activity; 2) his employer was aware of that activity; 3) he suffered an action that would be reasonably likely to deter a person from engaging in a protected activity; and 4) that there was a causal connection between the protected activity and the action. If relevant, the *McDonnell-Douglas* burden-shifting analysis also applies." *Pilgrim v. McGraw-Hill Cos.*, 599 F. Supp. 2d 462, 469 (S.D.N.Y. 2009).

In the present case, Defendants do not dispute that Ardigo has adequately alleged three of the four factors required to show a prima facie case. First, Ardigo's complaints were made to Welsh, so his employer was plainly aware of his activity. Second, Ardigo was given negative performance reviews and was ultimately fired, and therefore suffered "an action that would be reasonably likely to deter a person from engaging in a protected activity." *Pilgrim*, 599 F. Supp. 2d at 469; *see, e.g.*, *Birkholz v. City of New York*, 10-CV-4719 (NGG) (SMG), 2012 WL 580522, at *15 (E.D.N.Y. Feb. 22, 2012) ("The CHRL is slightly more solicitous of retaliation claims

than federal and state law because, rather than requiring a plaintiff to show an 'adverse employment action,' it only requires him to show that something happened that was 'reasonably likely to deter a person from engaging in protected activity.'" (quoting N.Y.C. Admin. Code § 8-107(7))). And third, the causal connection is adequately alleged insofar as Ardigo's negative performance reviews and termination occurred within weeks of his complaints. *See, e.g.*, *Gorman-Bakos v. Cornell Coop. Extension of Schenectady County,* 252 F.3d 545, 554 (2d Cir. 2001) ("[A] plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." (internal quotation marks and alteration omitted)). Thus, the only dispute between the parties is whether the Amended Complaint adequately alleges that Ardigo engaged in "protected activity."

Although the question is a close one, the Court concludes that it does. To establish that he engaged in protected activity, Ardigo "need not establish that the conduct [he] opposed was actually a violation of [the law], but only that [he] possessed a good faith, reasonable belief that the underlying employment practice was unlawful." *Summa v. Hofstra Univ.*, 708 F.3d 115 (2d Cir. 2013) (internal quotation marks omitted). Here, Ardigo may well have trouble proving the reasonableness of his belief that Defendants violated the NYCHRL given that, for the reasons stated above, his Amended Complaint does not come particularly close to stating plausible discrimination or hostile work environment claims. But in light of (1) Ardigo's allegations that he complained about multiple arguably offensive comments *and* about Welsh's alleged retaliation (in the form of false performance evaluations) for his initial complaints and (2) the fact that the NYCHRL has been construed so broadly, the Court cannot say that the Amended Complaint fails to state a plausible claim of retaliation. *See, e.g.*, *Riscili v. Gibson Guitar Corp.*,

10

605 F. Supp. 2d 558, 565-67 (S.D.N.Y. 2009) (citing cases holding that "a single offensive remark may support a reasonable, if mistaken, belief that the law has been violated").

**D. Aiding and Abetting**

Finally, the Amended Complaint brings an aiding-and-abetting claim against Defendants Burch and Welsh. Under the NYCHRL, it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this [provision], or to attempt to do so." N.Y. Exec. Law § 296(6); N.Y.C. Admin. Code § 8-107(6). Accessory liability, however, may be found only where a where a primary violation has been established. *See, e.g.*, *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007); *see also, e.g.*, *Sowemimo v. D.A.O.R. Sec., Inc.*, 43 F. Supp. 2d 477, 490 (S.D.N.Y. 1999) ("[L]iability under the . . . NYCHRL must first be established as to the employer/principal before an individual may be considered an aider and abettor."). Here, because the only claim that survives the motion to dismiss is Ardigo's retaliation claim, and Burch is not alleged to have had anything to do with the retaliation, Ardigo's aiding-and-abetting claim with respect to Burch is dismissed. Welsh, on the other hand, is alleged to have been directly and personally involved in the retaliation, by giving Ardigo false performance evaluations and firing him. Accordingly, the aiding-and-abetting claim against Welsh survives.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is GRANTED as to Plaintiff's claims of employment discrimination and hostile work environment. It is also GRANTED as to Plaintiff's and aiding-and-abetting claim with respect to Defendant Burch. The motion to dismiss is DENIED as to both Plaintiff's retaliation claim and the aiding-and-abetting claim with respect to Defendant Welsh.

In light of this disposition, Plaintiff's motion for sanctions, which argues that Defendants filed an entirely frivolous motion, is DENIED. Indeed, if anything, it is Plaintiff's motion for sanctions that is frivolous, not Defendants' motion to dismiss.

Plaintiff is given until April 5, 2013, to properly file the Amended Complaint by e-mailing it to caseopenings@nysd.uscourts.gov. Failure to do so will result in an appropriate sanction.

**The Clerk of Court is directed to terminate Docket Nos. 14 and 21.**

SO ORDERED.

Dated: March 25, 2013
      New York, New York

_____
JESSE M. FURMAN
United States District Judge